UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Civil Case No:_____

Manufacturas Post-Form, S.A. de C.V.
a Mexican Company

       Plaintiff,

v.

Apex Brands, Inc., a Delaware Corporation

       Defendant

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

      Plaintiff, Manufacturas Post-Form, S.A. de C.V. (hereinafter referred to as "MPF" or "Plaintiff"), by its attorneys, for its Complaint against Defendant Apex Brands, Inc. (hereinafter referred to as "Apex" or "Defendant"), alleges as follows, upon knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

### Nature of Action and Subject Matter Jurisdiction

1. This action seeks a Declaratory Judgment for Non-Infringement of Defendant's unregistered trade dress under 15 U.S.C. § 1125, et. seq.

2. Subject matter jurisdiction over this action is conferred upon this Court: (i) pursuant to 28 U.S.C. §§2201 and 2202, because it involves a request for a declaratory judgment in a case of actual controversy; and (ii) pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. §§1114 and 1125, because, *inter alia,* the suit concerns rights under the Lanham Act.

### Personal Jurisdiction and Venue

3. This Court has personal jurisdiction over Defendant because Defendant has charged Plaintiff with trade dress infringement directly, in its letter dated February 13, 2018. *See* Exhibit "A" Demand Letter dated February 13, 2018.

4. Defendant conducts business within the state and sells products through various online and physical retail stores including The Home Depot which provides direct services to Miami-Dade County residents.

1

## The Parties

5. Plaintiff MPF is a Mexican corporation that manufactures and distributes its products bearing the trademark DURABOX in the United States.

6. Upon information and belief, Defendant Apex Brands, Inc. is a Delaware corporation with a business address 1000 Lufkin Road Apex, North Carolina that manufactures products bearing the federally registered trademark JOBOX and sells the finished product to other companies in the United States.

## Facts Common to All Claims for Relief

7. On or about February 13, 2018, MPF received a cease and desist letter requesting that MPF comply with its request by February 27, 2018.

8. MPF has received numerous follow up communications from Defendant.

9. MPF and Defendant sell their products throughout the United States.

10. Defendant's products may be purchased in retail and online retail stores services featuring home improvement goods and services like THE HOME DEPOT and WALMART.

11. MPF's products may be purchased from specialized distributors targeting the construction, tool and hardware industry.

12. Both MPF and Defendant sell various products including chests, cabinets, and toolboxes under dissimilar trademarks.

13. MPF sells these products in packaging and with actual labels affixed on the physical product bearing DURABOX.

14. Defendant sells these kinds of products in packaging and with actual labels affixed on the physical product bearing the federally registered trademark "JOBOX."

15.  MPF's sales of products including chests, cabinets, and toolboxes do not infringe any rights that Defendant may allegedly own in the design of Defendant's JOBOX® standard chest.

16. Defendant alleges in the demand letter that the size, shape, color, and mechanisms are identical or highly similar to Plaintiff's Durabox product line.

2

17. MPF's sales of products including chests, cabinets, and toolboxes do not infringe any rights that Defendant may allegedly own in the design of Defendant's JOBOX® drop front chest.

18. MPF's sales of products including chests, cabinets, and toolboxes do not infringe any rights that Defendant may allegedly own in the design of Defendant's JOBOX® slope lid chest.

19. MPF's sales of products including chests, cabinets, and toolboxes do not infringe any rights that Defendant may allegedly own in the design of Defendant's JOBOX® cabinets.

20. MPF's sales of products including chests, cabinets, and toolboxes do not infringe any rights that Defendant may allegedly own in the design of Defendant's JOBOX® clamshell cabinet.

21. MPF's sales of products including chests, cabinets, and toolboxes do not infringe any rights that Defendant may allegedly own in the design of Defendant's JOBOX® piano boxes.

22. MPF's sales of products including chests, cabinets, and toolboxes do not infringe any rights that Defendant may allegedly own in the design of Defendant's JOBOX® field office.

23. MPF's sales of products including chests, cabinets, and toolboxes do not infringe any rights that Defendant may allegedly own in the design of Defendant's JOBOX® rolling workbench.

24. MPF's sales of products including chests, cabinets, and toolboxes do not infringe any rights that Defendant may allegedly own in the design of Defendant's JOBOX® welders box.

25. The size of the chests, cabinets, and toolboxes sold by Apex is common and used by various third parties in the industry.

26. The color of the chests, cabinets, and toolboxes sold by Apex is common and used by various third parties in the industry. MPF's chests are of a different color and are a vibrant orange.

27. The shape, size, and design of the standard chests sold by Defendant is common and used by various third parties in the industry.

3



Shape, size, and design of standard chests sold by third parties Figure "A".

28. MPF's chests have an A-frame lid bolster mounted under the lid of the chest with different dimensions and positioning from the A-frame lid bolster  mounted under the lid of the chests sold by Apex.

29. Defendant alleges MPF's chest copies the following features of the JOBOX standard chest:

    a.  The placement of the full length A-frame lid bolster mounted under the lid of the chest;

    b.  The dual locking arms welded to the lid;

    c.  The three point moving latch system mounted inside the lid with single padlock security;

    d.  Full length reinforcing channel on the front of the chest;

    e.  Recessed handles; and

    f.  Four way skid bolsters on the bottom of the chest;

    g.  Size and dimensions identical and or similar;

    h.  Coloring is highly similar.

30. Defendant alleges in its cease letter that MPF's slope lid chest copies the following features of the JOBOX slope lid chest:

    a.  Three-point locking system built into the lid;

    b.  Drop down front support arm to hold the lid in a horizontal position;

    c.  Full length reinforcing channel on the front of the chest;

    d.  Recessed handles;

    e.  Four-way skid bolsters on the bottom of the chest;

    f.  Fold-up interior shelving unit;

    g.  Size and dimensions identical and or similar;

    h.  Coloring is highly similar.

31. MPF's slope lid chests require fewer pieces to be assembled; are designed different, specifically, the position of its latches are different from that of Defendant's slope lid chest model; have three anti-theft plates; and has a padlock. The skid bolsters on the bottom of MPF's slope lid chests are made as individual feet unlike Defendant's four way skid bolsters located on the bottom of Defendant's slope lid chest.

32. The shape, size, and design of the slope lid chest sold by Defendant is common and used by various third parties in the industry.



Shape, size, and design of slope lid chest models sold by third parties. Figure "B ".

33. Defendant alleges in its cease letter that MPF's drop front chest copies the following features of the JOBOX drop front chest:

    a.  The placement of the full-length A-frame lid bolster mounted under the lid of the chest;

    b.  Front and sidewall body design;

    c.  Two-point sliding lock system mounted in the lid;

    d.  Lid locking arm on the right side of the lid and lower gas assisted shock on the left side of the lid;

    e.  Deep sidewall storage shelves and sidewall reinforcement;

    f.   Full length reinforcing channel on the front of the chest;

    g.   Recessed handles;

    h.   Four-way skid bolsters on the bottom of the chest;

    i.   Front ramp with sliding lock rod in the body to lock the drop front ramp in the up position;

    j.   Size and dimensions of the products

    k.   Coloring is highly similar.

34. The shape, size, and design of the drop front chests sold by Defendant is common and used by various third parties in the industry.



Shape, size, and design of drop front chests sold by third parties Figure "C".

35. Defendant alleges MPF's cabinets copy the following features of the JOBOX cabinets

    a.   Bin cabinet and galvanized bin dividers;

    b.   Door design with shelving;

    c.   Anti-tip skid bolsters;

    d.   Recessed sidewall handles;

    e.   Size and dimensions identical;

    f.   Coloring similar.

36. The shape, size, and design of the cabinets sold by Defendant is common and used by various third parties in the industry.

37. MPF's cabinets utilize different locking systems; have designed different latches and doors; and have larger metal tubes which are used as sidewall handles.



Size, shape, and design of cabinets sold by third parties. Figure "D".



Recessed sidewall handles sold by third parties. Figure "E".

38. Defendant alleges MPF's clamshell products copy the following features of the JOBOX
    clamshell products:

    a.  Lockable small storage bin in top right hand side of cabinet;

    b.  Open vertical storage bin in right hand side of cabinet;

    c.  Locking hasp assembly; and

    d.  Number and design of shelving units within the cabinet;

8

  e. Size and dimensions identical

  f. Coloring is similar.

39. The shape, size, and design of clamshell products sold by Defendant is common and used by various third parties in the industry.



    Similar product shape, size, and design sold by third parties. Figure "F".

40. Defendant alleges MPF's piano boxes copy the following features of the JOBOX piano boxes:

  a. Two and three shelf storage systems with built in sidewall storage bins;

  b. Double 90 degree sidewall form;

  c. Lift up rear bottom shelf;

  d. Low front vertical panel;

  e. Recessed handles;

  f. Four way skid bolsters on the bottom of the piano boxes;

  g. Three-point locking system with padlock enclosure in lid;

  h. Size and dimensions identical

  i. Coloring is similar.

41. The shape, size, and design of the piano box products sold by Defendant is common and used by various third parties in the industry.





Similar product shape, size, and design sold by third parties. Figure "G".

42. Defendant alleges MPF's field office products copy the following features of the JOBOX field office products:

    a.  Top door safety support art and gas spring lid;

    b.  Back shelf with sidewall storage welded to it;

    c.  Holes incorporated into upper shelf for hanging items on S hooks;

    d.  White steel pegboard rear and sidewall inserts to hang supplies;

    e.  Door design and rain gutter feature;

    f.  Rear side access and entry door and latch;

    g.  Size and dimensions identical

    h.  Coloring is similar.

43. The shape, size, and design of the field office products sold by Defendant is common and used by various third parties in the industry.

 

11



Similar product shape, size, and design sold by third parties. Figure "H"

| Brand | Model | Length | Width | Height |
|-------|-------|--------|-------|--------|
| Jobox | 1-674990 | 63 | 42 | 80 |
| Knaack | 119-01 | 60 | 44 | 82 1/4 |
| Durabox | DBJB5106342Z00 | 63 1/2 | 42 1/2 | 80 |
| Greenlee | 8060DLX | 55.6 | 41.6 | 80 |

.

44. Defendant alleges MPF's rolling work bench products copy the following features of the JOBOX rolling work bench products:

    a.  Internal drawers and shelf mounting designs;

    b.  Adjustable height drawers; and

    c.  Shelf and retainer band door designs;

    d.  Size and dimensions identical;

    e.  Coloring is similar.

45. The shape, size, and design of the rolling work bench products sold by Defendant is common and used by various third parties in the industry.



Similar product shape, size, and design sold by third parties. Figure "I".

46. Defendant alleges MPF's welders boxes copy the following features of the JOBOX welders box products:

    a.  Lid shape and hasp;

    b.  Right hand body cut out for torch hoses;

    c.  Lifting handles on the side of the box;

    d.   Size and dimensions identical

    e.   Coloring is similar.

47. The shape, size, and design of the welders box products sold by Defendant is common and used by various third parties in the industry.



Similar product shape, size, and design sold by third parties. Figure "J".

48. In fact, MPF's welder boxes have a double bending C-shaped cut out in the box different from Defendant's body cut out for torch hoses.



MPF's cut out.

49. The welders boxes in the market utilize the same design and placement of lifting handles.



Similar lifting handles used by third parties of welders boxes. Figure "K"

50. Defendant has begun contacting MPF's clients, and upon information and belief is alleging "JOBOX has a lawsuit against DURABOX and anyone associated with the sale of DURABOX products, including sales representatives and distributors will also be included in the suit."

51. Defendant's management has contacted our VP of sales threatening to sue MPF while also hinting the future lawsuit could be dispelled if MPF stopped selling its private label products in the United States and began manufacturing products for Defendant.

52. MPF has not received a single communication, written or verbal, intended for Defendant.

53. An actual case or controversy exists between MPF and Defendant regarding the trade dress rights in this case because Defendant is threatening to sue MPF and is contacting MPF's customers and distributors. As a result, MPF seeks a declaration of noninfringement upon Defendant's alleged protectable trade dress rights.

54. MPF denies all allegations of trade dress infringement and any possible claims of alleged unfair competition.

55. MPF has several contracts with distributors throughout the United States.

15

56. Defendant is contacting MPF's distributors to reduce and stop sales of MPF's DURABOX products.

57. RAM Tools is one of MPF's distributors who has been contacted by the Defendant and has been threatened with a lawsuit if RAM Tools continues to purchase and sell MPF's Durabox products.

58. Upon information and belief, RAM Tools, in fear of a lawsuit, has obtained DURABOX products from MPF on credit since at least March 2018 because of the threats received from Defendant.

59. MPF's sales in the United States have reduced and been diminished by Defendant's interference and unsubstantiated claims regarding contributory infringement to various distributors.

60. MPF has been harmed by Defendant's unjustified conduct.

## COUNT I NONINFRINGEMENT AND INVALIDITY OF TRADE DRESS OF JOBOX® STANDARD CHEST

61. MPF realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 60 as though fully set forth herein.

62. Defendant claims to offer distinctive goods well known to consumers interested in the tool industry.  Defendant further claims that the design of JOBOX® standard chest has become recognized in the industry as symbols uniquely associated with Defendant. Defendant also claims that MPF has misappropriated and copied Defendant's trade dress, and is likely to cause confusion in the marketplace, by creating alleged copies of Defendant's products in violation of section 43(a) of the Lanham Act.

63. Defendant's asserted trade dress is functional.

64. Defendant's asserted trade dress is generic.

65. Defendant's asserted trade dress lacks any secondary meaning.

66. There is no actual or likely confusion in the marketplace as to source, sponsorship, affiliation, or authorization of Defendant's products.

67. MPF has not acted in any way in a manner that constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact which is likely to cause confusion as to the source of MPF's products.  Accordingly MPF seeks a declaration of the Court that the product line it sells under DURABOX does not violate any trade dress or design rights owned by the Defendant.

## COUNT II NONINFRINGEMENT AND INVALIDITY OF TRADE DRESS OF JOBOX® SLOPE LID CHEST

68. MPF realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 60 as though fully set forth herein.

69. Defendant claims to offer distinctive goods well known to consumers interested in the tool industry.  Defendant further claims that the design of JOBOX® slope lid chest has become recognized in the industry as symbols uniquely associated with Defendant. Defendant also claims that MPF has misappropriated and copied Defendant's trade dress, and is likely to cause confusion in the marketplace, by creating alleged copies of Defendant's products in violation of section 43(a) of the Lanham Act.

70. Defendant's asserted trade dress is functional.

71. Defendant's asserted trade dress is generic.

72. Defendant's asserted trade dress lacks any secondary meaning.

73. There is no actual or likely confusion in the marketplace as to source, sponsorship, affiliation, or authorization of Defendant's products.

74. MPF has not acted in any way in a manner that constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact which is likely to cause confusion as to the source of MPF's products. Accordingly MPF

seeks a declaration of the Court that the product line it sells under DURABOX does not

violate any trade dress or design rights owned by the Defendant.

## COUNT III NONINFRINGEMENT AND INVALIDITY OF TRADE DRESS OF JOBOX® DROP FRONT CHEST

75. MPF realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 60 as though fully set forth herein.

76. Defendant claims to offer distinctive goods well known to consumers interested in the tool industry.  Defendant further claims that the design of JOBOX® drop front chest has become recognized in the industry as symbols uniquely associated with Defendant. Defendant also claims that MPF has misappropriated and copied Defendant's trade dress, and is likely to cause confusion in the marketplace, by creating alleged copies of Defendant's products in violation of section 43(a) of the Lanham Act.

77. Defendant's asserted trade dress is functional.

78. Defendant's asserted trade dress is generic.

79. Defendant's asserted trade dress lacks any secondary meaning.

80. There is no actual or likely confusion in the marketplace as to source, sponsorship, affiliation, or authorization of Defendant's products.

81. MPF has not acted in any way in a manner that constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact which is likely to cause confusion as to the source of MPF's products. Accordingly MPF seeks a declaration of the Court that the product line it sells under DURABOX does not violate any trade dress or design rights owned by the Defendant.

## COUNT IV NONINFRINGEMENT AND INVALIDITY OF TRADE DRESS OF JOBOX® CABINETS

18

82. MPF realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 60 as though fully set forth herein.

83. Defendant claims to offer distinctive goods well known to consumers interested in the tool industry.  Defendant further claims that the design of JOBOX® cabinets has become recognized in the industry as symbols uniquely associated with Defendant.  Defendant also claims that MPF has misappropriated and copied Defendant's trade dress, and is likely to cause confusion in the marketplace, by creating alleged copies of Defendant's products in violation of section 43(a) of the Lanham Act.

84. Defendant's asserted trade dress is functional.

85. Defendant's asserted trade dress is generic.

86. Defendant's asserted trade dress lacks any secondary meaning.

87. There is no actual or likely confusion in the marketplace as to source, sponsorship, affiliation, or authorization of Defendant's products.

88. MPF has not acted in any way in a manner that constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact which is likely to cause confusion as to the source of MPF's products. Accordingly MPF seeks a declaration of the Court that the product line it sells under DURABOX does not violate any trade dress or design rights owned by the Defendant.

## COUNT VII NONINFRINGEMENT AND INVALIDITY OF TRADE DRESS OF JOBOX® PIANO BOXES

89. MPF realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 60 as though fully set forth herein.

90. Defendant claims to offer distinctive goods well known to consumers interested in the tool industry.  Defendant further claims that the design of JOBOX® piano boxes has become recognized in the industry as symbols uniquely associated with Defendant.

19

Defendant also claims that MPF has misappropriated and copied Defendant's trade dress, and is likely to cause confusion in the marketplace, by creating alleged copies of Defendant's products in violation of section 43(a) of the Lanham Act.

91. Defendant's asserted trade dress is functional.

92. Defendant's asserted trade dress is generic.

93. Defendant's asserted trade dress lacks any secondary meaning.

94. There is no actual or likely confusion in the marketplace as to source, sponsorship, affiliation, or authorization of Defendant's products.

95. MPF has not acted in any way in a manner that constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact which is likely to cause confusion as to the source of MPF's products. Accordingly MPF seeks a declaration of the Court that the product line it sells under DURABOX does not violate any trade dress or design rights owned by the Defendant.

### COUNT VIII NONINFRINGEMENT AND INVALIDITY OF TRADE DRESS OF JOBOX® FIELD OFFICE

96. MPF realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 60 as though fully set forth herein.

97. Defendant claims to offer distinctive goods well known to consumers interested in the tool industry.  Defendant further claims that the design of JOBOX® field office products have become recognized in the industry as symbols uniquely associated with Defendant. Defendant also claims that MPF has misappropriated and copied Defendant's trade dress, and is likely to cause confusion in the marketplace, by creating alleged copies of Defendant's products in violation of section 43(a) of the Lanham Act.

98. Defendant's asserted trade dress is functional.

99. Defendant's asserted trade dress is generic.

100. Defendant's asserted trade dress lacks any secondary meaning.

101. There is no actual or likely confusion in the marketplace as to source, sponsorship, affiliation, or authorization of Defendant's products.

102. MPF has not acted in any way in a manner that constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact which is likely to cause confusion as to the source of MPF's products. Accordingly MPF seeks a declaration of the Court that the product line it sells under DURABOX does not violate any trade dress or design rights owned by the Defendant.

## COUNT IX NONINFRINGEMENT AND INVALIDITY OF TRADE DRESS OF JOBOX® ROLLING WORKBENCH

103. MPF realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 60 as though fully set forth herein.

104. Defendant claims to offer distinctive goods well known to consumers interested in the tool industry.  Defendant further claims that the design of JOBOX® rolling workbench has become recognized in the industry as symbols uniquely associated with Defendant.  Defendant also claims that MPF has misappropriated and copied Defendant's trade dress, and is likely to cause confusion in the marketplace, by creating alleged copies of Defendant's products in violation of section 43(a) of the Lanham Act.

105. Defendant's asserted trade dress is functional.

106. Defendant's asserted trade dress is generic.

107. Defendant's asserted trade dress lacks any secondary meaning.

108. There is no actual or likely confusion in the marketplace as to source, sponsorship, affiliation, or authorization of Defendant's products.

21

109.     MPF has not acted in any way in a manner that constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact which is likely to cause confusion as to the source of MPF's products. Accordingly MPF seeks a declaration of the Court that the product line it sells under DURABOX does not violate any trade dress or design rights owned by the Defendant.

## COUNT X NONINFRINGEMENT AND INVALIDITY OF TRADE DRESS OF JOBOX WELDERS BOX

110.     MPF realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 60 as though fully set forth herein.

111.     Defendant claims to offer distinctive goods well known to consumers interested in the tool industry.  Defendant further claims that the design of JOBOX® welders box has become recognized in the industry as symbols uniquely associated with Defendant. Defendant also claims that MPF has misappropriated and copied Defendant's trade dress, and is likely to cause confusion in the marketplace, by creating alleged copies of Defendant's products in violation of section 43(a) of the Lanham Act.

112.     Defendant's asserted trade dress is functional.

113.     Defendant's asserted trade dress is generic.

114.     Defendant's asserted trade dress lacks any secondary meaning.

115.     There is no actual or likely confusion in the marketplace as to source, sponsorship, affiliation, or authorization of Defendant's products.

116.     MPF has not acted in any way in a manner that constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact which is likely to cause confusion as to the source of MPF's products. Accordingly

MPF seeks a declaration of the Court that the product line it sells under DURABOX does not violate any trade dress or design rights owned by the Defendant.

## COUNT XI TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

117.    MPF realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 60 as though fully set forth herein.

118.    Defendant claims to offer distinctive goods well known to consumers interested in the tool industry. Defendant claims that MPF has misappropriated and copied Defendant's trade dress, and is likely to cause confusion in the marketplace, by creating alleged copies of Defendant's products in violation of section 43(a) of the Lanham Act. Defendant is contacting RAM Tools, one of MPF's distributors, threatening the company with a contributory trade dress infringement lawsuit if RAM Tool distributors continue to advertise, promote, and sell MPF's products.

119.    MPF has a business relationship or contract with RAM Tools.

120.    Defendant has knowledge of the business relationship or contract with RAM Tools, knows it is interfering, and desires to interfere with MPF's contractual relationships, and knows that interference is substantially certain to occur as a result of its action.

121.    Defendant's conduct is and or will imminently result in a contractual breach between RAM Tools and MPF.

122.    RAM Tools distributors are fearful of purchasing product from MPF and complying with the distributor agreement entered into with MPF.

123.    RAM Tools has breached and or will breach its distribution agreement with MPF.

124.    MPF has suffered damages as a result of the interference by Defendant with RAM Tools and its other contacted distributors.

## **PRAYER FOR RELIEF**

WHEREFORE, MPF respectfully requests:

1. The Court enter a declaratory judgment that MPF is not infringing and has not infringed upon Defendant's alleged trade dress rights described in the Cease letter dated February 22, 2018.

2. That the Court order Defendant to stop contacting MPF's customers and distributors regarding the alleged trade dress infringement.

3. Damages related to Defendant's unjustified interference with MPF and JAM Tool's business relationship.

4. That the Court grant MPF such other further relief as it may deem just and proper.

Dated: May 22, 2018                              Respectfully submitted,

By: /s/Juliet Alcoba/
**Juliet Alcoba**
Fla. Bar No. 95502
E-mail: jalcoba@alcobalaw.com
**Ruben Alcoba**
Fla. Bar 169160
E-mail: alcoba@alcobalaw.com

ALCOBA LAW GROUP, P.A.
*Attorneys for Plaintiff*
3399 NW 72 Avenue, #211
Miami, FL 33122
Telephone: (305) 362-8118
Facsimile: (305) 436-7429

24

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22nd day of May, 2018, I electronically filed the foregoing

document with the Clerk of Court by using the CM/ECF System. I also certify that the foregoing

document is being mailed to

Apex Brands, Inc.

1000 Lufkin Road

Apex, North Carolina 27539.